IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-492

No. COA20-828

Filed 21 September 2021

Burke County, No. 20SPC50205

IN RE: K.V.

Appeal by Respondent from order entered 10 July 2020 by Judge Richard S. Holloway in Burke County District Court. Heard in the Court of Appeals 8 September 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Erin E. McKee, for the State.*

*Carella Legal Services, PLLC, by John F. Carella, for Respondent-Appellant K.V.*

INMAN, Judge.

Respondent-Appellant K.V. ("Mr. Vickers")[1] appeals from an involuntary commitment order declaring him mentally ill and dangerous to others. The State concedes, and we agree, that the record evidence and the trial court's findings are insufficient to support the conclusion that Mr. Vickers was dangerous to others. We reverse the involuntary commitment order.

## I.    FACTUAL & PROCEDURAL HISTORY

---

[1] We use a pseudonym to protect the privacy of the respondent and for ease of reading.

Mr. Vickers was arrested in Polkton, North Carolina, on 19 April 2019 and charged with threatening a judge presiding in a child welfare case. He was incarcerated pending trial. Fourteen months later, in June 2020, he was deemed incapable to proceed as a defendant in the criminal prosecution and was involuntarily committed to Broughton Hospital. He was reexamined upon admission, and the admitting psychiatrist recommended further involuntary commitment for up to 30 days. The psychiatrist, however, failed to indicate which statutory basis supported further involuntary commitment. The examination form noted Mr. Vickers had allegedly threatened a judge and was "dangerous," but failed to indicate whether he was a threat to himself or others and did not include any basis for deeming him dangerous.

The trial court held a hearing on the involuntary commitment recommendation on 10 July 2020. The attending psychiatrist at Broughton Hospital testified for the State, opining that Mr. Vickers: (1) suffered from an unspecified psychotic disorder; (2) was not dangerous to himself; and (3) was a danger to others. However, the psychiatrist further testified that Mr. Vickers "has not been aggressive or self injurious," and had not made any threats to others since his admission. She also testified that she had not forced medication on Mr. Vickers because "[i]t's unethical to force medication on a patient *who is not a danger to himself or others.*" (emphasis added). The State offered no evidence about Mr. Vickers's conduct during his fourteen

months in the Rowan County Jail immediately preceding his admission to Broughton Hospital.

¶ 4    Mr. Vickers testified that he had no history of mental illness and denied making a "true threat" against a judge. He testified that he made no threat in court or in the presence of the judge, but posted a "Facebook rant" expressing his feelings about "what happened in the past to the Court and how my family got divided because of a bunch of falsehoods and lies meant to destroy my family."

¶ 5    The trial court entered an order involuntarily committing Mr. Vickers for an additional fourteen days based on conclusions that Mr. Vickers suffered from a mental illness and was dangerous to others. In support of its conclusions, the trial court recited the attending psychiatrist's testimony that Mr. Vickers suffered from an unspecified psychiatric disorder, had refused medication, and had cursed at Broughton Hospital staff. Mr. Vickers appealed.

## II.    ANALYSIS

¶ 6    Mr. Vickers contends that the involuntary commitment order must be vacated without remand because the trial court failed to find—and the evidentiary record does not disclose—facts showing him to be dangerous to others. The State concedes both issues.

¶ 7    In order to involuntarily commit an individual as mentally ill and dangerous to others, a trial court must make findings based on clear, cogent, and convincing

evidence showing that:

> [w]ithin the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated.

N.C. Gen. Stat. § 122C-3(11)(b) (2019); *see also* N.C. Gen. Stat. § 122C-268(j) (2019) (imposing the clear, cogent, and convincing evidence standard to determinations of dangerousness to others).  The State concedes that the trial court's findings were inadequate to support a conclusion of dangerousness to others.  It further concedes that the evidence presented to the trial court—the attending psychiatrist's conclusory opinion,[2] the incomplete 29 June 2020 involuntary commitment recommendation form, and Mr. Vickers's testimony—fails to clearly, cogently, and convincingly show Mr. Vickers was a threat to others.  The State likewise agrees that it is appropriate to set aside the trial court's order without remand under these circumstances.  *See, e.g., In re N.U.*, 270 N.C. App. 427, 433, 840 S.E.2d 296, 300-01 (2020) ("As neither the record evidence nor the findings of fact support the trial court's conclusion that

---

[2] In a later order dismissing another involuntary commitment hearing held on 24 July 2020, the trial court found that the attending psychiatrist's conclusion that Mr. Vickers was dangerous to others was "not based in the relevant past and [was] conclusory and d[id] not provide clear findings that substantiate mental illness and dangerousness."

Respondent was dangerous . . . , we reverse the trial court's involuntary commitment order.").

¶ 8        Because we are convinced that no reasonable trier of fact could find that Mr. Vickers was a danger to himself or others within the scope of the involuntary commitment statute, we reverse, rather than vacate, the trial court's order.  *Id.*; *see also In re Booker*, 193 N.C. App. 433, 437, 667 S.E.2d 302, 305 (2008) (holding that when the facts found by the trial court do not support a determination of dangerousness to self or others, "we must reverse the trial court's order" (citation omitted)).

## III.    <u>CONCLUSION</u>

¶ 9        For the foregoing reasons, we reverse the involuntary commitment order.

REVERSED.

Judges DIETZ and GRIFFIN concur.